IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ADT, LLC,**

      **Petitioner,**

**v.**                                                                                    **No. 1:25-cv-00143-JHR-SCY**

**MICHAEL SANCHEZ,**

      **Respondent.**

## MEMORANDUM OPINION AND ORDER DENYING PETITION TO COMPEL ARBITRATION [DOC. 1]

THIS MATTER comes before the Court on Petitioner ADT, LLC's Petition for an Order Compelling Arbitration Pursuant to Section 4 of the Federal Arbitration Act [Doc. 1]. Respondent Michael Sanchez filed a response [Doc. 3] and ADT filed a reply [Doc. 9]. Sanchez submitted additional arguments in opposition via a Motion to Deem Arbitration Agreement Invalid [Doc. 14]. ADT filed a response [Doc. 15] and Sanchez filed a reply [Doc. 16]. The Court has reviewed the briefing, case record, and applicable law. For the reasons below, the Court DENIES ADT's petition, FINDS AS MOOT Sanchez's motion to invalidate, and remands Sanchez's claims against ADT to state court.

## I.      PROCEDURAL BACKGROUND

Sanchez filed suit against ADT, Safe Streets USA, and Randal Brooks in the 2nd Judicial District Court of New Mexico on August 8, 2024. [Doc. 1-2, at 1]. Brooks, a Safe Streets sales representative, sold an ADT security system to Sanchez for his home in November 2021. *Id.* at 2. Sanchez signed an "Alarm Services Contract" with Safe Streets, who acted as an "authorized provider" and "independent authorized dealer" of ADT. [Doc. 1-3, at 3]. Sanchez alleged that after a technician installed the system, Brooks showed up at his house unannounced and without an

appointment approximately eleven times between November 1 and November 22, 2021. [Doc. 1-2, at 3–4]. On November 22, Sanchez demanded that Brooks leave and cease his appearances. *Id.* at 3. But when Sanchez went to sit down, he alleged Brooks grabbed him, pinned him to the couch, licked his face, and grabbed his genitals. *Id.* at 4. Sanchez alleged he managed to get off the couch and forced Brooks to leave. *Id.*

On February 10, 2025, ADT removed Sanchez's claims against it to federal court and filed its petition to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. [Doc. 1, at 1]. As grounds, ADT cited the arbitration clause contained in Sanchez's services contract, which ADT purchased from Safe Streets on November 12, 2021. *Id.* at 3–4. The petition initially named Safe Streets and Brooks as co-parties. *Id.* at 1. Sanchez responded on February 26, 2025, arguing in part the Court did not have jurisdiction to hear the petition due to a lack of diversity of citizenship between himself and Brooks. [Doc. 3, at 4]. ADT responded that Safe Streets' and Brooks's inclusion was an error, as it only sought to compel arbitration of Sanchez's claims against ADT. [Docs. 8, 9]. At a status conference on April 3, 2025, the parties agreed the issue of jurisdiction had been resolved, and the Court granted leave to Sanchez to file additional arguments without objection from ADT. [Doc. 12, at 1]. Sanchez filed his motion to invalidate the arbitration clause on April 18, 2025. [Doc. 14].[1]

## II.    **BRIEFING SUMMARY**

ADT argues compelling arbitration is proper pursuant to the arbitration clause of the service contract, which reads:

> DEALER AND I AGREE THAT ANY AND ALL DISPUTES BETWEEN US
> SHALL BE GOVERNED BY THIS BINDING ARBITRATION AGREEMENT.

---

[1] ADT challenges this motion as an improper sur-reply, [Doc. 15, at 1], but the Court expressly gave Sanchez leave to file this motion. [Docs. 12, 13]. To the extent ADT is correct that Sanchez did not file a cognizable "motion" under the Federal Rules of Civil Procedure, the Court nevertheless treats the filing like approved additional briefing on ADT's petition.

> . . . [T]he term "Dispute" means any claim or controversy . . . whether based in contract; tort; fraud; intentional acts; violation of any statute, code or regulation; or other legal theory.

[Doc. 1-3, at 8]. ADT argues the arbitration clause is subject to the FAA, valid, enforceable, and covers Sanchez's claims based on Brooks's alleged sexual misconduct. [Doc. 1, at 5].

Sanchez responds that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), codified 9 U.S.C. § 401 et seq., empowers him to forgo arbitration. [Doc. 3, at 2–3]. While the EFAA did not become law until March 3, 2022, Sanchez argues the EFAA applies because his claims did not accrue until he filed suit. *Id.* In addition, Sanchez argues the arbitration clause is unconscionable and unenforceable. [Doc. 14, at 3]. As grounds, Sanchez cites: (1) the parties grossly unequal bargaining power and ADT's take-it-or-leave-it offer of the service contract; (2) the clause's exception for claims made in small claims court, which unfairly benefits ADT: (3) the clause's class-action waiver; and (4) the limitation of ADT's liability for any claim to ten percent of the contract's annual service charge. *Id.* at 5–8. Finally, Sanchez asserts the service contract is unenforceable for failure to adequately define who the "dealer" and "provider" are in the arbitration clause. *Id.* at 8.

ADT replies that none of Sanchez's arguments can invalidate the arbitration clause. First, ADT argues that the clear majority of federal courts have held a claim accrues, for purposes of the EFAA's application, once a plaintiff knew or had reason to know he had a cause of action. [Doc. 9, at 5]. For Sanchez, that date at the latest would be November 21, 2021, the day Brooks allegedly assaulted him. *Id.* As to Sanchez's unconscionability and ambiguity arguments, ADT asserts that none of them affect the arbitration clause, reflect such grossly unfair terms as to be unenforceable, or demonstrate a genuine dispute of fact with respect to the contract's formation and parties. [Doc. 15].

### III.    APPLICABLE LAW

3

The FAA requires enforcement of any agreement to submit to arbitration a controversy relating to a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements," making courts duty-bound to "rigorously" enforce their terms. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (internal quotations omitted). To that end, the FAA extends to the furthest reaches of Congress's ability to regulate interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). However, the FAA makes exceptions to this policy. *E.g.*, 9 U.S.C. § 1 (excluding employment contracts for workers in channels of commerce); *see also id.* § 402 (exception for arbitration agreements relating to sexual assault or sexual harassment disputes). Additionally, an arbitration agreement—and a motion to compel its enforcement—may be challenged "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Such grounds are generally governed by applicable state law. *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

A § 2 defense cannot derive from nor depend on the fact that an arbitration agreement is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). In addition, arbitration clauses in contracts are severable. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Consequently, the arbitration clause itself must be invalid or unenforceable to fall outside the FAA's protection.[2] *Id.* Furthermore, if the parties clearly and unmistakably agreed to arbitrate the "gateway" questions of the arbitration agreement's validity, enforceability, or applicability, then a party may compel arbitration based on that agreement. *Id.* at 69, 69 n.1, 71–72. The party opposing arbitration, in turn, must successfully challenge the "gateway" arbitration agreement in order to challenge in court the arbitration agreement covering its substantive claims. *Id.* But whether the

---

[2] The severability rule does not require a party opposing arbitration to present a challenge that applies *exclusively* to the arbitration clause at issue; a defense applies to an arbitration provision if it applies "equally" to the whole contract. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024).

parties formed the agreement supporting the motion to compel arbitration is always a question for the court. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).

Motions to compel arbitration proceed similarly to motions for summary judgment. The movant bears the initial burden of establishing that a valid arbitration agreement exists. *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017). If the movant does so, the burden shifts to the nonmovant to demonstrate a genuine dispute of material fact over the agreement's validity or enforceability. *Id.* The court must resolve all factual conflicts in favor of the nonmovant, including giving the nonmovant the benefit of all reasonable inferences. *Hancock v. AT&T Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). If no genuine dispute of material fact exists, the court may resolve the motion as a matter of law. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). However, when a genuine dispute does exist, the court must proceed summarily to trial to resolve it. *Id.* While the nonmovant may request limited, expeditious discovery to oppose arbitration, the nonmovant must establish how discovery would assist its opposition. *THI of NM at Hobbs Ctr., LLC v. Spradlin*, 532 F. App'x 813, 819 (10th Cir. 2013) (citation omitted).

## IV.    ANALYSIS

The parties do not dispute that the FAA governs nor that New Mexico law provides the controlling state-law principles in this case. Applying New Mexico law, the Court finds that the arbitration agreement is invalid because it is supported by illusory consideration.

As the movant for arbitration, ADT bears the burden of establishing the necessary elements of the arbitration agreement's formation—offer, acceptance, mutual assent, and consideration. *See BOSC*, 853 F.3d at 1177; *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶

5

42, 304 P.3d 409, 420. Consideration cannot be "illusory," meaning a party cannot retain the ability to unilaterally modify or revoke its promised obligations in the contract. *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶ 9, 90 P.3d 466, 469. Applying New Mexico law, the Tenth Circuit held that an arbitration agreement which gives one party an "unfettered right to alter the arbitration agreement's existence or scope" is illusory. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). By contrast, an arbitration agreement that grants one party the power to modify its terms but sufficiently limits that power is valid. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 478 (10th Cir. 2006); *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 33, 142 P.3d 34, 43.

*Dumais* did not hold that an effectively one-sided arbitration agreement is per se invalid. *See Dumais*, 299 F.3d at 1219–20. After *Dumais*, the Tenth Circuit implied its holding addressed situations where the consideration supporting an arbitration agreement was the mutual obligation to arbitrate. *Pennington v. Northrop Grumman Space & Mission Sys. Corps.*, 269 F. App'x 812, 819 (10th Cir. 2008). And other decisions have found that effectively one-sided arbitration agreements can be validly formed when supported by other consideration. *See, e.g.*, *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1277–79 (D.N.M. 2010) (agreement to arbitrate can be supported by offer of employment); *A.C. Dellovade, Inc. v. Walsh Federal/Alberici Joint Venture*, No. 19-cv-00163, 2019 WL 2870110, at *3 (W.D. Okla. July 3, 2019) (Oklahoma law); *Vernon v. Quest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (Colorado law). However, a contract containing an effectively one-sided arbitration clause is invalid if the consideration supporting that contract is illusory too. *See Dumais*, 299 F.3d at 1217, 1220 (American Golf could modify any provision in the whole employment contract, rendering arbitration agreement therein invalid); *see Salazar*, 2004-NMSC-013, ¶ 9, 90 P.3d at 469 (same);

6

*see also Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1033 (D. Colo. 2012) (interpreting *Dumais*).

Here, the ADT service contract bars unilateral modification by the customer; its terms "apply as written without alteration or qualification, unless a change is approved in writing by an [sic] Provider's[3] authorized representative." [Doc. 1-3, at 11]. Yet the service contract places no limitation on what provisions ADT may modify or when, does not require ADT to seek Sanchez's approval, nor requires notice of changes.[4] *Id.* at 11. The lack of a notice requirement is made more conspicuous by the notice requirements for other provisions. *Id.* at 7, 8, 11. No language limits ADT's ability to modify the arbitration clause once a claim accrues, once ADT receives notice of the claim, or once the customer initiates a proceeding against it. *Cf. Hardin*, 465 F.3d at 478. In short, the ADT service contract grants ADT the same unfettered right of modification found in the employment contract from *Dumais*, and its arbitration clause is therefore illusory and invalid. *Dumais*, 299 F.3d at 1219.[5]

## V.     **CONCLUSION**

For the reasons above, the Court DENIES ADT's petition to compel arbitration [Doc. 1] and FINDS AS MOOT Sanchez's motion to invalidate the arbitration agreement [Doc. 14]. The Clerk is directed to remand the matter back to the 2nd Judicial District Court, Bernalillo County, New Mexico.

IT IS SO ORDERED.

_____
HON. JERRY H. RITTER
United States Magistrate Judge

---

[3] The "Provider" is ADT after its purchase of the contract from Safe Streets. [Doc. 1-3, at 3, 4].
[4] The service contract separately allows ADT to waive its liability limit upon request by Sanchez. [Doc. 1-3, at 7]. Though Sanchez may have the power to ask, he has no apparent power over the ultimate decision to grant or deny a waiver.
[5] To the extent ADT's ability to modify the contract is ambiguous, ambiguity is construed against ADT's desire to arbitrate. *Dumais*, 299 F.3d at 1219.